UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD NESSEL,

       Plaintiff,                        Civil Action No. 10-12504

v.                                  HON.  STEPHEN J. MURPHY

                                      U.S. District Judge

                                      HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application Disability Insurances Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment DENIED.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB on July 28, 2006, alleging disability as of June 3, 2002 (Tr. 88-90).  After the initial denial of benefits, Plaintiff requested an administrative hearing, held in Oak Park, Michigan on June 19, 2009.  Administrative Law Judge ("ALJ") John Kraybill presided by teleconference from Oak Brook, Illinois (Tr. 11, 18).  Plaintiff,  represented by attorney Kenneth Laritz testified (Tr. 21-31, 41-47), as did medical expert ("ME") Dr. Ashok Jilhewar (Tr. 31-39) and vocational expert ("VE") Thomas Dunleavy (Tr. 47-51).  On August 4, 2009, ALJ Kraybill found that Plaintiff was not disabled (Tr. 17).  On June 18, 2010, the Appeals Council denied review (Tr. 1-5).  Plaintiff filed for judicial review of the final decision on June 24, 2010.

## BACKGROUND FACTS

Plaintiff,  born February 16, 1948, was age 62 when the ALJ issued his decision (Tr. 88). He graduated from high school and worked previously as an electrician (Tr. 110, 114).  He alleges disability due to "[a]rthritis in back and legs, bulging discs, foot pain [and] residuals of broken right foot" (Tr. 109).

### A.    Plaintiff's Testimony

 Plaintiff testified that he had not worked since being terminated on June 3, 2002 (Tr. 21). He reported that he broke his foot in 1999 but that a claim for Workers' Compensation on that basis was unsuccessful (Tr. 22).  He indicated that he performed a variety of household and yard work chores but that back problems prevented him from edging his lawn  (Tr. 23).

Plaintiff, indicating that he had recently been diagnosed with diabetes, reported that he had not smoked in six months (Tr. 23).  He testified that he took Darvocet on a daily basis for  pain in his knees, back, toes, shoulders, elbows, and fingers (Tr. 24).

The ALJ, noting that Plaintiff's last insured date was December 31, 2007, proceeded to question him about his condition on or before that date (Tr. 25).  Plaintiff testified that he had arthroscopic surgery performed on his knees in 2007, but did not dispute that Carpal Tunnel Syndrome ("CTS") resulting in surgery and rotator cuff problems did not develop until after 2007 (Tr. 25).  He reported that after his 1999 foot fracture, his employer placed him on restricted duty (Tr. 26).  In response to questioning by his attorney, Plaintiff indicated that his former job as a electrical wire technician (as performed) required him to stand on a frequent to constant basis and lift up to 60 pounds (Tr. 26-27).  He testified that as of July, 2003, he was receiving treatment for shooting pains in his right leg (Tr. 27).  He estimated that as of that time, he experienced up to three "bad" days every week, alleging that on a bad day, he was unable to walk or lift than eight to ten

pounds (Tr. 28-29). He reported that leg and back pain obliged him to recline for at least once every day (Tr. 29).

### B.    Medical Records

### 1. Treating Sources

In December, 1999, Plaintiff reported continued right foot pain and swelling after a workplace accident the previous month (Tr. 174). An x-ray revealed multiple toe fractures (Tr. 174). In March, 2000, Plaintiff reported that he could walk without pain (Tr. 173). July, 2000 imaging studies showed that the fracture site was healed (Tr. 172). He was discharged from treatment in September, 2000 (Tr. 171). The same month, Scott T. Monson M.D. remarked that a knee examination was normal (Tr. 229). A December, 2000 MRI of the lumbar spine showed disc protrusion at L3-4 but otherwise unremarkable results (Tr. 180, 235). Dr. Monson advised home exercises and avoidance of heavy lifting and repetitive bending (Tr. 229).

Plaintiff underwent physical therapy in October, 2000 and May, 2001 for leg, knee, and lumbar back pain (Tr. 181-211). He reported a "marked and good improvement" over the course of October, 2000 (Tr. 197). Upon resuming therapy in May, 2001 for lumbar back pain, Plaintiff reported "gradually decreasing pain" (Tr. 188). Therapy records note imaging studies showing the absence of nerve damage (Tr. 182, 233). The same month, Dr. Monson, finding "excellent quadricep strength," opined that surgery was not needed (Tr. 230). In September, 2001, Dr. Monson advised against lifting over 20 pounds (Tr. 230).

In April, 2003, Robert E.M. Ho M.D., noting that an MRI of the lower extremities showed "[m]inor delay in H1 reflex" on the right, ordered additional imaging studies (Tr. 218, 234). A lumbar myelogram performed in July, 2003 showed moderate end plate changes and disc bulging at L4-5 but otherwise mild findings (Tr. 219, 222, 225). Dr. Ho diagnosed Plaintiff with a moderate

-3-

spinal stenosis, but observed full strength in all extremities and normal muscle tone and gait  (Tr. 215, 227).  In September, 2003, Dr. Monson opined that surgery was unnecessary "based on how well [Plaintiff was] doing" (Tr. 232).

In February, 2006, Dr. Ho signed a "Certificate of Disability," on behalf of Plaintiff's efforts to access his Individual Retirement Account ("IRA") holdings (Tr. 213).  Dr. Munson, performing a March, 2007 examination, remarked that he had not seen Plaintiff since 2003 (Tr. 262).  The same month, an MRI of the right knee showed a tear of the medial meniscus (Tr. 255).  Plaintiff underwent right arthroscopic knee surgery in April, 2007 and on the left in June, 2007 (Tr. 262).  In May, 2007, Plaintiff reported left thumb joint pain (Tr. 262).  A "Grind" test was positive, but Plaintiff showed only moderate arthritic changes and a "weakly positive" Dequervain's sign[1] (Tr. 262).  Plaintiff reported improvement from an injection to the thumb joint (Tr. 262).  August, 2007 treating notes indicate that knee problems were largely resolved, but that Plaintiff complained of shoulder pain (Tr. 263).

In October, 2007, Plaintiff had a positive Tinel's sign, but declined a recommendation for imaging studies[2]  (Tr. 263).  In June, 2008, Plaintiff reported good results from injections to the shoulder (Tr. 264).  In September, 2008, an EMG study showed the presence of CTS, "severe" on the right and "marked to severe" on the left (Tr. 260).  Carpal tunnel release on the right, performed the same month, was deemed successful (Tr. 264).

---

[1] De Quervain's tenosynovitis is defined as an "inflammation of tendons on the side of the wrist at the base of the thumb." http://www.medterms.com /script/main/ art.asp? articlekey=16070.  A "grind test" is a diagnostic tool for osteoarthritis of the thumb. http://www.medscape.org/viewarticle/527751_11.

[2] Tinel's sign is defined as "[a]n examination test that is used by doctors to detect an irritated nerve. Tinel's sign is performed by lightly banging (percussing) over the nerve to elicit a sensation of tingling or "pins and needles" in the distribution of the nerve." http://www.medterms.com/script/main/art.asp?articlekey=16687.

## 2. Consultive Sources

In November, 2006, R. Patel, M.D. examined Plaintiff on behalf of the SSA (Tr. 238-245). Plaintiff reported low back pain radiating to the right leg (Tr. 238). Dr. Patel observed normal muscle tone, a steady gait, and normal handgrip and pinch strength (Tr. 239-240). He found that Plaintiff was capable of walking one to two miles (Tr. 239). The right foot appeared unremarkable (Tr. 240). Plaintiff exhibited normal muscle strength in all extremities and normal ranges of motion (Tr. 243-244).

The same month, Delois D. Daniels, M.D. performed a non-examining Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 247). Plaintiff was limited to occasional stooping, kneeling, crouching, and crawling (Tr. 248). Dr. Daniels found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 249-250).

## C. Medical Expert Testimony

Dr. Jilhewar, noting the dearth of treatment notes between October, 2003 and April, 2007, remarked that in 2003, treating sources differed as to whether Plaintiff was a candidate for back surgery (Tr. 33-34). He observed that records from March, 2007 showed that Plaintiff reported right knee pain as a result of a meniscle tear, resulting in arthroscopic surgery in April, 2007 (Tr. 34). Dr. Jilhewar testified that Plaintiff appeared to obtain good results from physical therapy and a right shoulder injection in June, 2007 (Tr. 34). He reported that Plaintiff experienced a positive Tinel's sign in October, 2007 and was first diagnosed with CTS in September, 2008 (Tr. 35). He opined that Plaintiff's claim that he was unable to make a fist was unsupported by objective medical testing

(Tr. 36). Based on the November, 2006 consultive examination by Dr. Patel, Dr. Jilhewar concluded

that Plaintiff was capable of performing exertionally light work[3] (Tr. 36).

### D. Vocational Expert

VE Thomas Dunleavy began his testimony by noting that subsequent to Plaintiff's foot

fracture, he was placed on restricted work duty (Tr. 41-47). The VE classified the former work as

an electrical wiring technician (as performed by Plaintiff) as skilled and exertionally medium but

was generally classified as semiskilled and exertionally light (Tr. 47-48). He testified that Plaintiff,

using skills from his former position, could perform the light positions of wiring technician, wiring

inspector, and electrical assembler, finding the existence of 5,000 of such jobs in the state of

Michigan  (Tr. 48). The VE testified that he drew his job findings from the *Dictionary of*

*Occupational Titles* ("DOT") and *Selected Characteristics of Occupations* (Tr. 49). In response to

questioning by Plaintiff's attorney, the VE stated that the positions of wiring inspector and electrical

assembler would require frequent fingering and handling and standing for six to eight hours each

day (Tr. 49).

### E.    The ALJ's Decision

 The ALJ found that Plaintiff experienced the severe impairments of "degenerative disc

disease, degenerative joint disease, bilateral carpal tunnel syndrome, and residuals of feet problems"

but that none of conditions or met medically equaled one of the impairments listed in Appendix 1,

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Subpart P, Regulations No. 4 (Tr. 13). The ALJ found that through the date last insured of December 31, 2007, Plaintiff had the Residual Functional Capacity ("RFC") for light work "except overhead lifting" (Tr. 14). The ALJ concluded that he could perform his past relevant work as a lead worker, wiring technician, and electrical assembler (Tr. 16).

The ALJ discredited Plaintiff's claims of that he was unable to stand or walk for more than short periods, citing Dr. Patel's November, 2006 finding of normal grip strength and the capacity to walk up to two miles (Tr. 14). He also noted that knee problems first diagnosed in March, 2007 had been successfully resolved with surgery by August, 2007 (Tr. 15). Finally, he observed that Plaintiff had undergone "very minimal treatment" between 2002 and 2006 (Tr. 16).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless

of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[4]

### Light Work

Plaintiff contends that the ALJ erred by finding that he could perform his past relevant work or any exertionally light work. *Plaintiff's Brief* at 7-15, *Dock. #10.* He appears to argue that he is not capable of performing his past relevant work due to the inability to stand for extended periods or perform frequent manipulative limitations. *Id.* at 8-9.

---

[4]In addition to the "light work" argument, Plaintiff's brief also includes an issue heading stating that the ALJ's credibility determination was erroneous. *Plaintiff's Brief* at 7, *Dock. #10.* However, the body of the brief contains no direct discussion of the credibility determination.

At Step Four, the Commissioner first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant. SSR 82-61. If so, the claimant is not disabled.   *Id.*   Here, Plaintiff's former position as a electrical wiring technician was performed at the medium exertional level.   A finding that he could return to his job, as performed, would   contradict the RFC   restricting to *light* work (Tr. 47-48).   Neither party disputes that Plaintiff was not capable of returning to his former job "as performed."

However, where a claimant is unable to return to his former job "as performed," the Commissioner considers whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Id.*; *Stephens v. Shalala,* 50 F.3d 538, 542 (8th Cir.1995).   Plaintiff does not dispute the VE's testimony that the wiring technician position was generally performed at the light exertional level (Tr. 14, 16, 47-48). The ALJ's finding that Plaintiff could perform light work is not incompatible with the VE's job findings.

Further, Plaintiff's  argument that substantial evidence does not support the "light work" RFC is unavailing.   He cites an interviewer's observation that he experienced difficulty sitting, standing, and walking.  *Plaintiff's Brief* at 8 (*citing* 106).   However, substantial evidence easily supports the conclusion that Plaintiff was capable of standing for six hours a day.   (Tr. 47-48).   In May, 2001, Dr. Monson noted "excellent quadricep strength"(Tr. 230).   In April, 2003, Dr. Ho observed normal muscle tone and gait (Tr. 215).   In September, 2003, Dr. Monson opined that Plaintiff was doing "well" and did not require surgery (Tr. 232).   Dr. Monson's earlier restrictions against lifting over 20 pounds is consistent with the demands of exertionally light work (Tr. 230). Dr. Patel's observation that Plaintiff had calluses on both feet and normal muscle strength  and ranges of motion also support the treating source conclusions (Tr. 239, 243-244).

-9-

As to his alleged manipulative impairments, Plaintiff argues somewhat disingenuously that limitations as a result of CTS prevent him from the frequent manipulative activity required for the position of wire technician. *Plaintiff's Brief* at 10. However, the September, 2008 carpal tunnel release surgery postdates his December 31, 2007 expiration of benefits by over eight months and there is a dearth of evidence supporting the conclusion that he experienced meaningful limitations before the end of 2007. To the contrary, 2007 records show that hand and wrist problems during that period responded to exclusively conservative treatment. May, 2007 treating notes indicate that he experienced good results from an injection (Tr. 262). He showed only moderate arthritic changes and a "weakly positive" Dequervain's sign (Tr. 262). The fact that he declined to consider more aggressive treatment or even agree to imaging studies in October, 2007 also supports the finding that he was able to comply with the manipulative requirements of a wiring inspector and electrical assembler before  December 31, 2007[5] (Tr. 263).

Finally, Plaintiff relies on a November 17, 2006 "Notice of Disapproved Claim" which states that "[w]e realize your condition prevents you from doing your past job(s)" for the proposition that the ALJ erred in making the Step Four conclusion (Tr. 53). This argument is  without merit. The next sentences of the Notice states that "we find you are able to do work not requiring as much lifting" (Tr. 53). The acknowledgment that Plaintiff was unable to perform the medium lifting requirements of his former position is not inconsistent with the ALJ's he could perform his previous work (as generally performed in the national economy) at the *light* exertional level.

---

[5] Moreover, while the VE testified that the wiring inspector and electrical assembler positions required frequent fingering and handling (Tr. 49), these jobs represented approximately half of the 5,000 positions cited (Tr. 49). Plaintiff's counsel did not ask whether the other 2,500 positions as electrical wiring technicians required frequent handling and fingering (Tr. 49).

In closing, I note that the transcript supports the finding that Plaintiff experienced some degree of limitation.  As such, my decision to uphold the ALJ's findings should not be read to trivialize his documented limitations.  Nonetheless, the ALJ's determination that the he was capable of returning to his past relevant work at the light exertional level is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is

extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                              s/R. Steven Whalen
                              R. STEVEN WHALEN
                              UNITED STATES MAGISTRATE JUDGE

Dated:  June 6, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on June 6, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on June 6, 2011: **None.**

                              s/Michael E. Lang
                              Deputy Clerk to
                              Magistrate Judge R. Steven Whalen
                              (313) 234-5217